2908.001



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY DIMMITT CADILLAC, INC,

    Movant/Petitioner,

vs.   Case No. 8:17cv449T36 MAP

UNITED STATES SECRET SERVICE, a
Division of the UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,
and the UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    Defendants.
_____/

## VERIFIED MOTION FOR RETURN OF PROPERTY AND PETITION FOR ORDER TO SHOW CAUSE

**PRELIMINARY STATEMENT**

Movant-Petitioner Larry Dimmit Cadillac, Inc. ("Movant"), brings this motion pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, 18 U.S.C. 1983, 28 U.S.C. 2465, and the equity jurisdiction of this Court to compel the return of a 2015 Cadillac Escalade, VIN Number 1GYS3TKJ7FR703388 ("the Vehicle"), or any assets received from the sale or auction of the same, seized by Defendant-Respondent U.S. Secret Service ("Defendant USSS") in Brooksville, Florida, on or about February 23, 2016. Defendant USSS served Movant with a seizure notice declaring the Vehicle subject to forfeiture pursuant to Title 18 U.S.C. 1981, on or about May 9, 2016 ("the Notice"). Despite Movant's specific contest of the forfeiture by filing a "Seized Asset Claim Form", as it was specifically instructed in the Notice, and despite the specific actions required by the USSS as described in Title 18 U.S.C. 1983, the USSS ignored



and in fact wrongfully treated Movant's submission of the Seized Asset Claims Form as an agreement to the forfeiture and Petition for Return/Remission of the Property. The USSS then initiated an administrative forfeiture proceeding, declared the Vehicle as forfeited, then ruled it its own favor on the "Petition for Return/Remission of Property" it erroneously declared Movant had filed. The administrative forfeiture initiated and declared by the USSS is void as are any actions taken as a result of this decision. Based on the USSS's wrongful actions, Movant has been wrongfully deprived of its property, the current whereabouts of which are unknown, and has been forced to retain the undersigned attorney to initiate this action.

Therefore, this motion should be granted and defendant USSS should be directed to immediately return the Vehicle to Movant. In the alternative, if the vehicle is no longer available, or has been damaged in any way as a result of the actions of the USSS, Movant should be compensated for the full amount of the vehicle. Additionally, the USSS should be ordered to pay Movant's reasonable attorney's costs in this matter pursuant to 28 U.S.C. 2465(b), as a claimant who has substantially prevailed in this civil forfeiture case.

**FACTUAL STATEMENT**

The facts underlying this motion are almost entirely a matter of record and should not be subject to good faith dispute by the government. Further, the few facts that are not a matter of record are certainly within the government's exclusive knowledge.

As a threshold matter, Movant does not challenge the legitimacy of the warrant and/or arrest which led to the seizure of the vehicle in this matter. Rather, Movant challenges the actions of the US Government, particularly the USSS, taken after the vehicle was seized as failing to follow the strict procedures required by Federal law, resulting in a complete failure to recognize and make whole movant as the innocent victim in this matter.

On February 23, 2016, Terrell Tramone Brown was charged by criminal complaint for aggravated identity theft, access device fraud, and wire fraud in violation of various Federal Statutes. (See Criminal Complaint and Affidavit, attached for reference as Exhibit 1). Mr. Brown was then charged by formal information on May 18, 2016 with the unauthorized use of a counterfeit access device (State of Kentucky Driver's License) to obtain credit to purchase a 2015 Cadillac Escalade (the Vehicle) and unlawful use of the identification of another with intent to defraud. (See Information, attached for reference as Exhibit 2). The facts leading to Mr. Browns arrest and charge for these crimes are contained within the affidavit to the criminal complaint contained within Exhibit 1, but are summarized below as follows:

On or about August 28, 2015, a man identifying himself as C.W., and later identified as Terrell Tramone Brown, entered Dimmitt Cadillac in Clearwater, FL and financed a 2015 Cadillac Escalade, with vehicle identification number (VIN) 1GYS3TKJ7FR703388, for the purchase price of approximately $102, 024.15. Brown provided Dimmitt employees with a counterfeit state of Kentucky Driver's license that featured C.W.'s date of birth and Brown's photograph, and gave the dealership C.W.'s actual date of birth and social security number. The $102,024.15 car deal was financed through Bank of America, NA (BOA), who became the lien holder upon completion of the fraudulent transaction. After an investigation apparently headed by the United States Secret Service (USSS), Brown was arrested and formally charged with this offense in the Middle District of Florida, Tampa Division. The Information also included a Forfeiture provision which stated that Brown was to forfeit specific property in the form of a money judgement in the amount of the proceeds of the offense, which was $102,024.15. Of note, the Vehicle is not mentioned anywhere in this forfeiture provision. (See Information, Attached for Reference as Exhibit 3). In a memorandum filed by the United States in support of the

Motion for forfeiture of money judgement, it was stated that "[b]ecause the United States could not locate the specific property traceable to the theft of government monies as charged in Count One of the information, i.e. the actual funds obtained or items purchased with the funds, the United States seeks a forfeiture *money judgment* in the amount of $102,024.15..." (See Motion for Forfeiture and Memorandum, attached hereto as Exhibit 3, emphasis added). Again, nowhere in the Information charging document is there an allegation that *the Vehicle* is subject to forfeiture, only a money judgment in the amount of the proceeds of the offense.

Contained in the loan contract between Larry Dimmitt Cadillac and Bank of America, NA was a "repurchase agreement", in which the dealership guaranteed to repurchase the contract if it was reasonably determined that there was a breach of any of the Dealer's representations and/or warranties. On March 14, 2016, Bank of America formally sought repayment from Dimmitt of the amount financed based on the fraudulent transaction by Brown. (See March 14, 2016 Letter from BOA to Dimmitt, attached hereto as Exhibit 4). Based on this agreement and its relationship with BOA, Dimmitt repurchased the loan from BOA for the full loan amount via wire transaction on or about April 22, 2016. On May 2, 2016, BOA formally acknowledged this repayment and transferred its security interest in the vehicle back to Dimmitt, stated it had no interest in recovering the vehicle, and that Dimmitt could pursue recovery on its own. (See May 2, 2016 email from Eric Benson at BOA to Kris Jordan at Dimmitt, attached hereto as Exhibit 5).

During the pendency of the criminal case, the USSS sent correspondence, first to BOA as the lien holder of the vehicle, and later to Dimmitt once BOA had relinquished its interest in the vehicle pursuant to the repurchase agreement, regarding the Vehicle and its intent to initiate forfeiture proceedings on the vehicle. On March 17, 2016, the USSS sent a letter to BOA informing BOA of the forfeiture action on the Vehicle and seeking BOA's response to the same.

In this, the USSS stated that BOA, as a potential interested party in the matter, had three options regarding the forfeiture: 1) to agree to the forfeiture and petition the USSS for return/remission of the forfeited property by filing the attached "Petition for Remission/Mitigation form; 2) disagree with the forfeiture and seek to contest it in the United States District Court by filing a claim with the attached "Seized Asset Claim Form."; or 3) it may have no interest in the property and therefore do not need to respond to the letter. (See 3/17/16 Letter from USSS to BOA, attached as Exhibit 6). In response to this letter, BOA, while it was still the lien holder for the Vehicle, apparently chose option 1, by not contesting the forfeiture and filing a Petition for Remission/Mitigation. (See BOA Petition for Remission/Mitigation dated 3/29/2016, attached as Exhibit 7.)

Around the same time period, on March 21, 2016, the USSS filed an official notification of the seizure for forfeiture of the Vehicle and applicable deadlines to file claims contesting the forfeiture or petitions for remission/mitigation to any interested parties. (See Official Notice, Dated March 21, 2016, attached as Exhibit 8). This Notice contained the following language/instructions regarding the forfeiture process: "To contest a forfeiture of the property in U.S. District Court, file a claim with the U.S. Secret Service on or before the date indicated. A claim must meet the requirements set forth in 18 U.S.C. 983(a)(2)(c) and must be filed with the Secret Service Asset Forfeiture Division at the address indicated below..."

On May 9, 2016, after Movant had paid BOA the repurchase amount and BOA had relinquished any interest in the Vehicle to Movant, the USSS sent the notice of forfeiture letter to the Fraud Department of Dimmitt Cadillac. (See May 9, 2016 letter from USSS to Dimmitt, attached hereto as Exhibit 9). This letter laid out the same three options Dimmit could chose in response to the forfeiture claim. Specifically, the letter stated that if Dimmit chose option "2", it

5

could "disagree with the forfeiture and seek to contest it in the United States District Court by filing a claim with the attached "Seized Asset Claim Form." (See Exhibit 9, paragraph 2). Further, on page 2 two of the letter, under a section titled "**To Contest the Forfeiture**", the letter stated: "If you disagree with the USSS that the property is subject to forfeiture and want the case tried in U.S. District Court, you must file a Claim of Ownership using the attached "Seized Asset Claim Form" with the USSS by June 13, 2016. **Please note:** if your sole intention is to request remission or mitigation of forfeited property (see above), and you are **not** seeking to challenge the forfeiture in court, you need only submit the enclosed "Petition for Remission or Mitigation" form…".

In response to this letter, Movant, on May 18, 2016, filed a Claim of Ownership using the "Seized Asset Claim Form" provided by the USSS in its May 9, 2016 letter, challenging the forfeiture and seeking to have the matter tried in U.S. District Court. (See "Seized Asset Claim Form, dated May 18, 2016, attached hereto as Exhibit 10). In this form, Movant provided all the necessary and available information it had to comply with the requirements of a Claim of Ownership and contest of forfeiture required by 18 U.S.C. 983(a)(2)(c), specifically: 1) it identified the property being claimed; 2) stated its interest in the property; 3) made its claim under oath and under penalty of perjury. Additionally, though not required by 18 U.S.C. 983(a)(2)(c), but referenced in the May 9, 2016 letter from the USSS, Movant provided documentary evidence of its interest in the vehicle, which was limited because a "stop title" hold had been placed on the vehicle, presumably as a result of the pending case.

Upon the filing of this Claim of Ownership with the USSS and complying with all rules and regulations governing the same, the USSS should have, and was in fact legally obligated to file a complaint for forfeiture, pursuant to 18 U.S.C. 983(3)(a). In a complete abrogation of its

duty under the law, however, the USSS chose to ignore Movant's very specific decision to claim ownership and initiate a contested forfeiture in U.S. District Court, and instead treated Movant's "Seized Asset Claim Form" as a "Petition for Remission or Mitigation of Forfeiture". (See May 26, 2016 letter from USSS to Dimmitt Cadillac, attached as Exhibit 11). In that letter, Special Agent Stuart Tryon of the USSS, despite Movant having specifically followed the procedures to contest the forfeiture by filing the "Seized Asset Claim Form" on May 18, 2016, which should have required the USSS to file a forfeiture proceeding, instead stated "[t]he Petition for Remission or Mitigation of Forfeiture you filed on behalf of Dimmit Cadillac, dated May 18, 2016, has been received by this agency." He then stated that "this matter concerns an administrative forfeiture and the following applies: A ruling on the petition *will be made by this agency* after the petition investigation and review have been completed. (See Exhibit 13, emphasis added). It is this emphasized language that Movant believes was the USSS's motive for ignoring and in fact completely and falsely mislabeling Movant's "Seized Asset Claim Form" as a "Petition for Remission/Mitigation." One would require the claim be tried by a neutral decision maker in U.S. District Court, and the other allowed the decision to be made solely by the USSS who was already in possession of the property it sought to forfeit.

After it unilaterally changed Movant's decision from one seeking to challenge the forfeiture in US District Court to one agreeing with the forfeiture and seeking remission/mitigation, the USSS, not surprisingly, denied Movant's "Petition for Remission" (though in reality, no such Petition existed). (See August 2, 2016 Denial of Remission letter from USSS to Dimmitt, August 9, 2016 request for reconsideration from Dimmitt to USSS, August 18, 2016 acknowledgement of Reconsideration Petition from USSS to Dimmit, and November 3,

2016 Final Denial Decision letter from USSS to Dimmitt, attached hereto as Exhibits 12, 13, 14 and 15, respectively.)

## ARGUMENT

**PROCEDURAL BASIS FOR THIS MOTION**

As of the date of this Motion/Petition, Movant has not obtained the Vehicle in question, proceeds from any sale or auction of the vehicle, or any insurance proceeds as a result of the loss of the vehicle. Rule 41(g) of the Federal Rules of Criminal Procedure provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

Movant is "a person aggrieved by . . . [the] seizure of property or by the deprivation of property" within the meaning of Rule 41(g). The Rule "provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." *United States v. Garcia*, 65 F.3d 17, 20 (4th Cir. 1999) (citing 1989 Advisory Committee note); *see* 124 F.R.D. 427-29 (reprint of 1989 Advisory Committee notes). "In order to file a motion for return, the seizure need not have been unlawful. Even though property has been lawfully seized, harm may come from the interference with the use of the property by persons who are not suspected of wrongdoing." 3A Wright & Miller, *Federal Practice & Procedure Crim.* § 690 (4th ed.) (footnotes and citations omitted).

This motion is properly filed in the district where the property was seized. Fed. R. Crim. P. 41(g); *United States v. Garcia*, 65 F.3d 17, 2012 (4th Cir. 1995), and movant has submitted herewith all evidence in its possession necessary to decide the factual issues presented. *E.g., Robinson v. United States*, 2013 WL 682894,*2 (E.D. Va. Feb. 22, 2013) ("any factual determinations supporting the court's decision must be based on evidence received") (citations and internal quotations omitted).

Further, despite the Rule's inclusion in the Federal Rules of Criminal Procedure, a Rule 41(g) motion is also appropriate where a "claimant . . . has not been subject to any type of criminal proceedings at all." *United States v. Rasco*, 21010 WL 2160838, *11 (S.D. Ga. Mar. 8, 2010) (report and recommendation) (quoting L. Levinson, *Fed. Crim. Rules Handbook* FRCP 41 (2009 ed.) (footnotes omitted), *adopted in part, rejected in part on other grounds by* 2010 WL 2160836 (S.D. Ga. May 27, 2010).[1] Accordingly, this motion is properly filed pursuant to Fed. R. Crim. P. 41(g). "A number of circuits have [also] noted that once the administrative forfeiture is completed, district courts retain jurisdiction to review the forfeiture to determine compliance with due process or procedural requirements." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). *See United States v. Schinnell*, 80 F.3d 1064, 1069 (5th Cir.1996); *United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir.1995); *United States v. Clagett*, 3 F.3d 1355, 1356–57 (9th Cir.1993); *United States v. Woodall*, 12 F.3d 791, 793 (8th Cir.1993); *Linarez v. United States*

---

[1] Some decisions state that a Rule 41(g) motion brought in a civil forfeiture case by a party against whom no criminal charges have been brought "is in fact a petition that the district court invoke its civil equitable jurisdiction." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (*en banc*); *see also United States v. Garcia*, 65 F.3d 17, 18 n.2 (4th Cir. 1995) ("a motion for return of property, at least where no criminal proceedings are pending, is a civil action against the United States") (citation omitted). While Movant here could have brought a civil petition, that is a parallel, not an exclusive remedy, and the motion remedy has been utilized because it provides a potentially quicker resolution of the dispute, as the court can request evidentiary submissions from the parties in deciding the motion, which should resolve it on a single set of papers, rather than through the initiation and litigation of plenary civil proceedings. Nevertheless, out of an abundance of caution, and to avoid bogging the matter down in procedural disputes, this motion is alternatively filed as a petition for relief pursuant to the Court's equity jurisdiction, as indicated in the caption and title of the motion.

*Dep't of Justice*, 2 F.3d 208, 213 (7th Cir.1993); *Frazee v. Internal Revenue Service*, 947 F.2d 448, 449–50 (10th Cir.1991); *Onwubiko v. United States*, 969 F.2d 1392, 1398–99 (2d Cir.1992). As such, this Court has jurisdiction to review the government's compliance with due process and procedural requirements, neither to which Movant argues were followed. Movant argues that the USSS unilaterally chose to transform Movant's "Seized Property Claim Form", which, by its own Notice and letter, should have initiated a formal contested forfeiture action in U.S. District Court, into a "Petition for Remission/Mitigation," which allowed the USSS to institute an administrative forfeiture and allow all decision making processes to be made by the USSS. The USSS's decision to take this action instead of filing a complaint for forfeiture in US District Court violated its responsibilities under 18 U.S.C 983(2), and therefore any actions taken by the USSS which occurred after this were and are substantively void as a matter of law. Accordingly, a judicial remedy in this matter is not only appropriate, but necessary to make Movant, the only real victim in this matter, whole.

**The USSS Failed to Comply with its Obligations Under 18 U.S.C. 983**

The statutory language of 18 U.S.C. 983, and the obligations it imposes on the governmental entity seeking to initiate forfeiture proceedings, is quite clear. Specifically, as to the facts of this matter, sections (2) and (3) of 18 U.S.C. 983 govern. Section (2) lays out the requirements for a person claiming seized property. It states:

> (A) Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure.
>
> (B) A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure.

(C) A claim shall—

(i) identify the specific property being claimed;
(ii) state the claimant's interest in such property; and
(iii) be made under oath, subject to penalty of perjury.

(D) A claim need not be made in any particular form. Each Federal agency conducting nonjudicial forfeitures under this section shall make claim forms generally available on request, which forms shall be written in easily understandable language.
(E) Any person may make a claim under subparagraph (A) without posting bond with respect to the property which is the subject of the claim.

<u>18 U.S.C. 983(2)</u>

Movant has fully complied with its obligations under 983(2). It received notice from the USSS on May 9, 2016, which listed the options Movant may choose to take. Pursuant to the letter, "if [movant disagreed] with the USSS that the property [was] subject to forfeiture and want the case tried in U.S. District Court, [Movant] must file a Claim of Ownership using the attached "Seized Asset Claim Form" with the USSS by June 13, 2016." In response to this, on May 18, 2016, Movant filed the referenced attached "Seized Asset Claim Form" stating its claim of ownership of the Vehicle. This should have, by the processes laid out in the USSS's own May 9, 2016 letter, and by the requirements of 18 U.S.C. 983(3), required the USSS to file a complaint forfeiture or return the property pending the filing of a complaint. Section (3) Of 18 U.S.C. 983 specifically states:

(3)

(A) Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

(B) If the Government does not—

11

>   (i)  file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or
>   (ii) before the time for filing a complaint has expired—
>
>   > (I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and
>   > (II) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute,
>
>   **the Government shall promptly release the property** pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.
>
>   (C) In lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment. If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute.

18 U.S.C. 1983(3) (Emphasis added)

It is without question that Movant filed a "claim" under 18 U.S.C. 983 when it filed its Seized Asset Claim Form in response to the USSS's May 9, 2016 letter. Movant complied precisely with the process laid out by the USSS in its letter and in the Notice issued on March 21. Despite this, however, the USSS ignored Movant's clear act to contest the forfeiture and for a claim to be filed in US District Court, and instead, and without reason (other than its own ulterior, self-serving motive) treated the forfeiture contest as a Petition for Remission or Mitigation, thus completely (but unlawfully) changing how the ownership and possession of the property would be handled. It is anticipated that the USSS may try to argue that Movant was aware of this decision and acquiesced to moving forward with the petition for remission/mitigation rather than the Forfeiture contest which Movant had filed. This argument, however, in addition to being moot because of the clear language and obligations imposed on the

USSS by Section 983, would be disingenuous. At this point in the matter, Kris Jordan, in her capacity as Chief Financial Officer of Movant, was responding to the forfeiture proceedings without the help of any attorney. In her capacity as a layperson unfamiliar with the processes, Ms. Jordan did not realize, and did not expect, that the USSS would completely change her and Movant's desire to contest the forfeiture. She trusted that the USSS would fulfill its obligations of moving forward with the correct forfeiture proceedings when she fulfilled hers. The USSS used its power to improperly induce Ms. Jordan and Movant into believing it was commencing the correct proceedings based on Movant's submission of the Seized Asset Claim Form, when in reality, it did just the opposite. It took the process out of a neutral decision makers hands and instead initiated a process wherein the USSS acted as its own decision maker regarding the property. Further, it removed any defenses Movant may have had in the forfeiture proceeding, specifically the "innocent owner defense" found in 18 U.S.C. 983(d).

18 U.S.C 983 is crystal clear on the obligations of both the claimed property owners and the governmental agency in control/possession of the property. Section (2) imposes the obligations for a person claiming property, and section (3) lays out the obligations of the governmental entity depending on the actions taken by the person claiming property. In this instance, Movant complied with its obligations in section (2), as well as those specifically laid out in the correspondence from the USSS, which follow those imposed in section (2). Despite its clear, unquestioned filing of the Seized Asset Claim Form, the USSS did not file a forfeiture claim with the US District Court as it was compelled by law to do upon this action by Movant. Instead, it not only ignored this request, but in fact unilaterally changed Movant's filing to that of a Petition for Remission/Mitigation, thereby retaining all decision making authority for itself and removing the ability for Movant to raise the innocent owner defense which should have

compelled a return of the property. Even if the USSS had simply failed to comply with its obligation to file a forfeiture claim within 90 days, it would be compelled to return the vehicle to Movant as required by section (3)(b). Considering beyond simple inaction, however, to affirmative mischaracterization (at the least) or falsifying records (at worst), this Court should require immediate release of the vehicle to Movant, or the funds received from an auction/sale of the vehicle, should that be the case, plus any lost profits to movant caused by the governments actions. Further, 28 U.S.C. 2465 entitles Movant to its reasonable attorney's fees incurred as a result of having to pursue this matter through litigation because of the actions taken by the USSS. It states:

> (b)(1) Except as provided in paragraph (2), in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for—
>
> (A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant;

28 U.S.C 2645(b).

## Petition for Order to Show Cause

WHEREFORE, Movant/Petitioner seeks an Order to Show Cause requiring the USSS within fourteen (14) days, pursuant to Local Rule 3.01(b), to show legal cause why the Vehicle should not be immediately returned to Movant, pursuant to 18 U.S.C. 1983(3)(b), which mandates that "**the Government shall promptly release the property** pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." As such, even if the USSS challenges this motion, the vehicle should be immediately released to movant pending the outcome.

Further, Movant/Petitioner, LARRY DIMMITT CADILLAC, INC., respectfully requests this Honorable Court to enter an Order granting this Motion and mandating return of the Vehicle which is the subject of this action, a 2015 Cadillac Escalade, VIN Number 1GYS3TKJ7FR703388 ("the Vehicle"), or any assets received from the sale or auction of the same, plus the difference of lost value/profits which occurred as a result of the USSS actions, reasonable attorney's fees incurred by Movant as a result of being forced to commence this action, and such other and further relief as the Court deems just and proper.

### CERTIFICATE OF GOOD FAITH PURSUANT TO FED. R. CIV. P. 37(a)(1) and LOCAL RULE 3.01(g)

I hereby certify that the undersigned counsel attempted to confer with the USSS and their counsel on multiple occasions to attempt to resolve this issue, but the parties could not reach an agreed outcome.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing is being e-filed pursuant to Rule 5.1 of the Federal Rules of Civil Procedure through the e-portal, on this 23d day of February, 2017.

*Michael D. Siegel*
Michael D. Siegel, Esquire
Florida Bar Number: 0436860
SPN#:00870580
Joel P. Williams, Esquire
Florida Bar Number: 91708
Dalan, Katz & Siegel, P.L.
2633 McCormick Drive, Suite 101
Clearwater, Florida 33759
(727) 796-1000 - Telephone
(727) 797-2200 – Facsimile
msiegel@dalan-katz.com
jwilliams@dalan-katz.com
jjames@dalan-katz.com
Attorney for Movant/Petitioner

15

## VERIFICATION PAGE

STATE OF FLORIDA    )

COUNTY OF PINELLAS  )

Kris Jordan, Chief Financial Officer for the Movant/Petitioner, Larry Dimmitt Cadillac, Inc., has reviewed the Verified Motion for Return of Property and Petition for Order to Show Cause regarding the allegations of which she has personal knowledge, and swears that she knows or believes them to be true.

SWORN TO and Subscribed before me by Kris Jordan, CFO for Larry Dimmitt Cadillac, Inc., who is <u>personally known</u> to me or has produced _____ as identification and who did take an oath and verified that the foregoing statement is true and correct.

Dated this 21st day of February, 2017, by its Chief Financial Officer:

_____
Kris Jordan

NOTARY PUBLIC, State of Florida

GYORGYI CASSIDY
MY COMMISSION # FF 063810
EXPIRES: October 16, 2017
Bonded Thru Budget Notary Services

_____
Signature of notary